**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINDA CURRY** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| **v.** | : | |
| | : | |
| **ROYAL OAK ENTERPRISES, LLC,** | : | **11-5527** |
| and **THE BRINKMANN CORPORATION,** | : | |
| Defendants. | : | |

DuBois, J.                                                                                      June 24, 2013

## M E M O R A N D U M

### I.      INTRODUCTION

This case arises out of injuries plaintiff Linda Curry suffered from a flash fire emanating from a smoker manufactured by defendant The Brinkman Corporation which contained charcoal briquettes and lighter fluid manufactured by defendant Royal Oak Enterprises, LLC.   In her Complaint, plaintiff asserts against both defendants claims of inadequate warnings and instructions based on negligence, strict liability, and breach of warranty.   Plaintiff provided the expert report of William S. Gilman in support of those claims.

Presently before the Court are defendants' motions to exclude the testimony of plaintiff's expert and motions for summary judgment.   For the reasons stated below, the Court grants each of defendants' motions.

### II.      BACKGROUND[1]

Plaintiff claims she was injured by a flash fire from a smoker on May 25, 2009.   (Compl. ¶ 22.)   Before the accident, she read the instructions for the three products at issue: the smoker manufactured by defendant The Brinkman Corporation and the charcoal briquettes and lighter fluid manufactured by defendant Royal Oak Enterprises, LLC.   (Defendant Royal Oak's

---

[1] The facts are presented in the light most favorable to plaintiff, the non-moving party.

Statement of Material Facts ("SOMF") ¶ 8.)   She then claims that, after removing the bowl from

the smoker, she placed charcoal briquettes in the bowl and applied lighter fluid to the briquettes.

(SOUF ¶ 9.)   Plaintiff then returned the bowl to the smoker, lit a newspaper with a match, and

threw the lit newspaper into the bowl in the smoker.   (SOUF ¶¶ 9, 10.)   That allegedly caused a

flash fire in the smoker, burning plaintiff's face, head, and arms.   (SOUF ¶ 10; Compl. ¶ 22.)

## III.   *DAUBERT* MOTIONS

A.   Legal Standard

Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods reliably to the facts of
> the case.

The "pathmarking" Supreme Court cases interpreting Rule 702 are *Daubert v. Merrell Dow

Pharm.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).   *United

States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004).   In *Daubert*, the Supreme Court held that

"[f]aced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset

. . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier

of fact to understand or determine a fact in issue."   *Daubert*, 509 U.S. at 592.   In *Kumho Tire*, the

Supreme Court made clear that the *Daubert* gatekeeping function extends beyond scientific

testimony to testimony based on "technical" and "other specialized" knowledge.   526 U.S. at 141.

Under *Daubert*, courts must address a "trilogy of restrictions" before permitting the

admission of expert testimony: qualification, reliability and fit.   *Schneider v. Fried*, 320 F.3d 396,

404 (3d Cir. 2003); *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).   The party

offering the expert must prove each of these requirements by a preponderance of the evidence.   *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999).

       1.    <u>Qualification</u>

      To qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony."   *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 335 (3d Cir. 2002) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)).   The Third Circuit has instructed courts to interpret the qualification requirement "liberally" and not to insist on a certain kind of degree or background when evaluating the qualifications of an expert.   *See Waldorf*, 142 F.3d at 625.   "The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such."   *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) (quoting Fed. R. Evid. 702) ("*Paoli I*").

      Moreover, "[t]his liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts."   *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."   *Id.* (quoting *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir.1996)).

       2.    <u>Reliability</u>

      The reliability requirement of *Daubert* "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief."   *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ("*Paoli II*") (quoting *Daubert*, 509 U.S. at 590).   In

*Kumho Tire*, the Supreme Court held that the *Daubert* test of reliability is "flexible" and that "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."   526 U.S. at 141-42 (emphasis omitted).   In determining whether the reliability requirement is met, courts examine the following factors where appropriate:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Mitchell*, 365 F.3d at 235 (citing *Paoli II*, 35 F.3d at 742 n.8).   These factors are neither exhaustive nor applicable in every case.   *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806-07 (3d Cir. 1997).

Under the *Daubert* reliability prong, parties "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."   *Paoli II*, 35 F.3d at 744 (emphasis omitted).   "The evidentiary requirement of reliability is lower than the merits standard of correctness."   *Id.*   "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process – competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies."   *Mitchell*, 365 F.3d at 244 (quoting *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)).

3.      Fit

For expert testimony to meet the *Daubert* "fit" requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue."   Fed. R. Evid. 702.   "This condition goes primarily to relevance.   Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."   *Daubert*, 509 U.S. at 591 (citations and internal quotation marks omitted).   "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."   *Id.*

B.   Discussion

Defendants seek to exclude the testimony of plaintiff's proposed causation expert: Mr. William S. Gilman.   The parties agree that Mr. Gilman has provided the following six opinions regarding causation and defendants products:

1) "Based on the conflicting and confusing charcoal starting statements, I believe Linda Curry followed the [Royal Oak] starter fluid/charcoal starting instructions which resulted in the fire ball occurring and resulting in her getting burned."
2) The warnings on the Royal Oak Lighter Fluid and Briquettes were inadequate and defective because they did not account for use of products in a smoker such as a Brinkmann smoker.
3) Warnings advising users to light charcoal outside the smoker should have been clearly indicated on the Royal Oak Lighter Fluid and Briquettes.
4) Alternatively, warnings to wait at least three (3) to five (5) minutes before lighting should have been clearly indicated on the Royal Oak Lighter Fluid and Briquettes.
5) Brinkmann should have advised to only use a chimney starter to light the charcoal outside of the smoker.
6) Alternatively, Brinkmann should have given a defined distance to its users if they chose to light the charcoal inside the smoker with lighter fluid: "The distance she stood from the smoker does not appear to be defined and perhaps if this distance was defined she may have avoided the fire ball."

(SOUF ¶ 14.)

Defendants argue that plaintiff's proposed expert is not qualified under Daubert to be used at trial.   Specifically, they argue that (1) he is unqualified to render an opinion in this case; (2) his opinions are unreliable because they are admittedly speculative; and (3) his opinions do not fit the

5

facts of the case.   Because the Court concludes that Mr. Gilman is not qualified as an expert and his opinions are not reliable, the Court does not decide whether his opinions fit the case.

             1.    <u>Expert's Qualifications</u>

Mr. Gilman is a chemist, with a bachelor's degree in chemistry from Temple University and a master's degree in chemistry from University of Dayton.   (Pl.'s Exhibit D at 2.)   He is a member of the American Chemical Society and the American Institute of Chemists.   (*Id*.)   As a chemist, he has a history of testing consumer products.   (*Id*.)   He has some experience with flammability studies dealing with paints, coatings, and other materials.   (*Id*.)   He has investigated a few fires, but the most recent investigation was more than 20 years ago.   (Pl.'s Exhibit E at 76.) He has never investigated fires involving grills, smokers, charcoal, and/or lighter fluid.   (*Id*. at 87, 91-92.)   Regarding warning labels, Mr. Gilman has prepared material safety data sheets on flammability and hazardous materials that were used to prepare product warnings.   (*Id*. at 78-79.) He also developed warning labels related to cosmetics over 25 years ago, but he has no formal training in that area and has no formal education in how people interact with warning labels.   (*Id*. at 76, 79-81.)   Further, he described the warning labels he developed for cosmetics as "caution, do not get in eyes.   Those kind of statements."   (*Id*. at 80.)   He has published twelve academic papers, but the most recent was over 20 years ago, and none dealt with the issues in this case. (Pl.'s Exhibit D at 2; Pl.'s Exhibit E at 67-69.)

Defendants take the position that Mr. Gilman is not qualified to opine in this case.   They argue that he has no training and minimal, outdated experience with the issues in the case and that he has no familiarity with any relevant scientific literature.   Specifically, they claim that he does not have experience with the products at issue, the flammability of such products, or the warnings associated with those products.   They point to the fact that Mr. Gilman's only experience with

product labels was development of a warning on cosmetics that said "do not get in eyes." Defendants also not that Mr. Gilman's largely speculative opinion betrays his lack of qualifications.

Plaintiff argues that her expert is qualified to testify.   She contends that her expert is a chemist and has experience investigating fires in the past.   He also engaged in product testing, has prepared material safety data sheets used to prepare warning labels, and has made labels for cosmetics.   Plaintiff also argues that the Court need only determine that Mr. Gilman has specialized knowledge that is merely "greater than the average layman" to allow him to testify. *See Elcock v. Kmart Corp.*, 233 F.2d 734, 741 (3d. Cir. 2000) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir.1998).

The Court concludes that plaintiff's proposed expert is not qualified under *Daubert* to testify at trial on the issue of inadequate warning labels.   Although Mr. Gilman is trained as a chemist, he has only minimal experience in warning labels.   Indeed, his only experience crafting a warning label was over 25 years ago and only dealt with the danger of getting cosmetics in a consumer's eye.   He has no formal education or training concerning warning labels and no experience regarding smokers, charcoal briquettes, and/or lighter fluid.   Finally, he lacks relevant academic publication history.   Accordingly, although the Court is mindful that the "liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts," the Court concludes that Mr. Gilman does not satisfy *Daubert*'s qualifications standard.   *See Pineda*, 520 F.3d at 244.

2.     Expert's Reliability

As a basis for his opinion, Mr. Gilman reviewed the owner's manual for the smoker, warning labels on the products, deposition testimony from the plaintiff and witnesses, and

7

photographs taken at the deposition.   (Pl.'s Exhibit C at 1.)   He also reviewed documents that

show the relative vapor density of air and lighter fluid.   (*Id*. at 3.)   However, Mr. Gilman did not

attempt to recreate the accident based on plaintiff's explanation to determine whether it could have

resulted in a flash fire.   (Pl.'s Exhibit E at 122-124.)   Nor did Mr. Gilman test any of the

scenarios included in his opinions to determine if they resulted in flash fires.   (Pl.'s Exhibit E at

116-117, 142-143, 149-151, 161-162)

> Defendants contend that Mr. Gilman's conclusions are unreliable because they are
speculative and not based on any methodology.   They argue that his failure to test either the
alleged mechanism of the accident or the safety of any of his proposed instructions/warnings
render those opinions unreliable.   In sum, they state that his opinions are based on unsupported
speculation and that he just assumes that plaintiff's version of the accident can result in a flash fire.
Indeed, they note that Mr. Gilman admitted the speculative nature of his opinion:

> Q:   I know [your opinions on how the accident occurred are] based upon the
> deposition; but in terms of doing a calculation and a scientific analysis and
> methodology to determine what could have happened in this case, it is speculation,
> is it not?
> A:   You might be able to call it that, yes.

(Pl.'s Exhibit E at 184-185.)

> Plaintiff counters that her expert's opinions are reliable.   She argues that Mr. Gilman read
testimony from plaintiff and witnesses, which described the incident.   He studied the products as
well as their labels and the owner's manual for the smoker.   He reviewed the documents
containing scientific data about the lighter fluid.   Although he did not test his hypotheses, he
stated that he could draw conclusions from his review of the record.   (Pl.'s Exhibit E at 108-109.)

> The Court concludes that Mr. Gilman's opinions are not reliable.   "If *Daubert* and its
progeny require anything, it is that plaintiffs come forward with proof of a valid methodology

based on more than just the *ipse dixit* of the expert."   *Pappas v. Sony Elecs., Inc.*, 136 F. Supp. 2d 413, 426 (W.D. Pa. 2000).   In *Oddi v. Ford Motor Co.*, for example, the Third Circuit considered an engineer's opinion that a bread truck was defectively designed.   234 F.3d 136, 146, 156 (3d Cir. 2000).   The engineer had engaged in a "haphazard, intuitive inquiry" using "little, if any, methodology beyond his own intuition."   *Id*. at 156, 158.   He made no calculations, did not test his hypotheses, and failed to consider alternative explanations for the extensive damage the truck sustained in a collision.   *Id*. at 156–58.   The *Oddi* court cited *Paoli II* for the principle that, to satisfy the reliability requirement, "[a]n 'expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation.'"   *Id*. at 158 (quoting *Paoli II*, 35 F.3d at 742).   The court thus precluded the engineer's testimony, holding that his "*ipse dixit* [did] not withstand *Daubert*'s scrutiny."   *Id*.

Plaintiff has not demonstrated that Mr. Gilman's opinions are reliable.   Like the engineer in *Oddi*, he "used little, if any, methodology beyond his own intuition."   *Id*. at 158.   He "conducted no test" of plaintiff's account of the accident to determine if it would in fact result in a flash fire.   *Id*.   Similarly, he "conducted no test" to determine whether his recommendations would or would not result in a flash fire.   *Id*.   Indeed, he admitted that his methodology was speculative.   (Pl.'s Exhibit E at 184-185.)   Such "unsupported speculation" is not enough to render Mr. Gilman's opinion reliable.   *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590).

    C.    <u>Conclusion</u>

For the foregoing reasons, Mr. Gilman is not qualified under *Daubert* to render an expert opinion and his opinion does not satisfy *Daubert*'s reliability requirement.   The Court need not reach the question of whether his opinion would fit the case.   Accordingly, the Court grants

defendants' motions to preclude Mr. Gilman's testimony.

## IV.   DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### A.   Legal Standard

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).   The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).   After examining the evidence of record, a court should grant a motion for summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B.   Discussion

Generally, in a products liability case, such as the instant case, plaintiff must provide expert evidence to establish liability. *See Oddi*, 234 F.3d at 159.   Although the Third Circuit has not foreclosed the possibility that a plaintiff may prevail with the use of non-expert evidence, it appears that only defects that can "reasonably be regarded by a lay juror" as "obviously

dangerous" do not require expert evidence.   *Id*.   For instance, the *Oddi* court concluded in a vehicle accident case involving the design of a truck that a juror needed the "peculiar competence of experts" to determine if the design of the front bumper and flooring of the cab of the truck at issue was defective, if testing would have disclosed the defect, and if the defect could have been remedied.   *Id*.   The court contrasted the need for expert evidence in that situation with *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, in which the Third Circuit concluded a lay juror could "reasonably … regard[]" a "whirling cutting blade without a proper guard" as "obviously dangerous" without expert evidence.   *See Oddi*, 234 F.3d at 159.

In this case, plaintiff can only seek to establish liability through the use of expert evidence. This case presents a product liability issue more akin to that found in *Oddi* than in *Padillas*.   As in *Oddi*, a jury requires the "peculiar competence of experts" to determine whether the warning labels at issue in this case were defective.   *Id*.   Unlike *Padillas*, a reasonable jury could not regard the various warning labels as "obviously" defective in this case.

Plaintiff requires the use of expert evidence to establish the liability of defendants.   The Court having excluded Mr. Gilman's testimony, plaintiff fails to raise a genuine dispute of material fact regarding liability, and defendants' motions for summary judgment are granted.

## V.   CONCLUSION

For the foregoing reasons, the Court grants defendants' *Daubert* Motions and Motions for Summary Judgment.   An appropriate order follows.